**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 7** |
| **MAXXIS GROUP, INC., MAXXIS 2000, INC., MAXXIS NUTRITIONALS, INC., MAXXIS RESOURCE AND DEVELOPMENT, INC., MAXXIS COMMUNICATIONS, INC.,** | ) | **CASE NOS. 03-77243 thru 03-77245 and 03-77247 thru 03-77248 (Jointly Administered under Case No. 03-77243)** |
| **Debtors.** | ) | **JUDGE DIEHL** |
| **S. GREGORY HAYS, Chapter 7 Trustee for Maxxis Group, Inc. et al.,** | ) | |
| **Plaintiff,** | ) | **ADVERSARY PROCEEDING** |
| **v.** | ) | **NO. ___________** |
| **ALVIN CURRY, LARRY GATES, DAVID FINKELSTEIN, ROBERT GLOVER, SANDRA JORDAN, TERRY HARRIS, STEVE JOHNSON, GEORGE STEINBERGER, IVEY STOKES, and PAM WARD,** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW S. Gregory Hays, duly appointed Chapter 7 Trustee ("Trustee") for Maxxis Group, Inc. et al., Debtors in the above-captioned jointly-administered cases (the "Bankruptcy Case"), and files this Complaint (the "Complaint") against Alvin Curry, Larry Gates, David Finkelstein, Robert Glover, Sandra Jordan, Terry Harris, Steve Johnson, George Steinberger, Ivey Stokes and Pam Ward (collectively, "Defendants"). In support of the Complaint, Trustee shows the Court as follows:

## NATURE OF ACTION

1.

The Plaintiff in this action is the duly appointed Chapter 7 Trustee of the jointly

administered bankruptcy cases of Maxxis Group, Inc., Maxxis 2000, Inc., Maxxis Nutritionals, Inc., Maxxis Resource and Development, Inc., Maxxis Communications, Inc. (collectively, the "Debtors"), who is authorized to pursue the claims and causes of action asserted herein for the benefit of Maxxis Group, Inc. ("Maxxis") and certain of its affiliates, Debtors in Case No. 03-77243 (jointly administered) which is pending before this Court. Pursuant to 11 U. S. C. § 544, Plaintiff has standing to assert claims against Defendants.

2.

Plaintiff has brought this action to recover damages from all Defendants, each an officer, director and/or controlling shareholder of Maxxis at all relevant times hereto, for the multiple breaches of their fiduciary duties to Maxxis and others, for corporate waste, and for their actions in deepening the insolvency of Maxxis.

**JURISDICTION**

3.

On December 15, 2003 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, modified, or supplemented, the "Bankruptcy Code"), and on December 15, 2003, an order was entered authorizing joint administration of the Debtors' estates.

4.

On November 16, 2005, the Court entered an order appointing S. Gregory Hays as Chapter 11 trustee for the Debtors' estates.

5.

On January 20, 2006, the Bankruptcy Case was converted to one under Chapter 7, and on February 21, 2006, the United States Trustee appointed S. Gregory Hays to continue as Chapter

7 trustee of the Bankruptcy Case.

6.

The claims and causes of action asserted herein arise under and pursuant to Sections 544 and 550 of the Bankruptcy Code, 11 U. S. C. §§ 544 and 550, and applicable common law.

7.

This is a civil proceeding which arises under, arises in, and relates to the aforesaid Bankruptcy Case under the Bankruptcy Code. It is a core proceeding within the meaning of 28 U.S.C. § 157(b). This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b) and Local Rule 83.7, N.D.Ga. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.

Venue of this proceeding is proper under 28 U.S.C. § 1409(a) in that this is the District in which the Bankruptcy Case is pending.

**THE PARTIES**

9.

S. Gregory Hays, in his capacity as Chapter 7 Trustee in the Bankruptcy Case, is the Plaintiff herein and may be served in this case through his undersigned counsel.

10.

Ivey Stokes ("Stokes"), an individual, is a Defendant herein who may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the Summons and this Complaint, via U.S. first class mail, postage prepaid, to him at his residence at 3939 Lavista Road, Unit 542, Tucker, GA 30084-5162 and/or 3974 Annistown Road, Snellville, Georgia 30039. On information and belief, at all relevant times Stokes was Chairman of the Board of Directors and,

for an extended period of time, Chief Executive Officer of Maxxis and owner of approximately 454,545 shares of Maxxis' outstanding common stock.

11.

Alvin Curry ("Curry"), an individual, is a Defendant herein who may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via U.S. first class mail, postage prepaid, to him at his residence at 6807 Wynbrooke Cove, Stone Mountain, Georgia 30087. On information and belief, at all relevant times Curry was a member of the Board of Directors and, for an extended period of time, Chief Executive Officer of Maxxis and owner of approximately 229,090 shares of Maxxis' outstanding common stock.

12.

Larry Gates ("Gates"), an individual, is a Defendant herein who may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via U.S. first class mail, postage prepaid, to him at his residence at 875 Lawrenceville-Suwanee, Suite 310-21, Lawrenceville, Georgia 30043. On information and belief, at all relevant times Gates was a member of the Board of Directors of Maxxis and owner of approximately 45,454 shares of Maxxis' outstanding common stock.

13.

David Finkelstein ("Finkelstein") an individual, is a Defendant herein who may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via U.S. first class mail, postage prepaid, to him at his residence at 6755 Burger, SE, Grand Rapids, Michigan 49546. On information and belief, at all relevant times Finkelstein was a member of the Board of Directors of Maxxis and owner of approximately 4,000 shares of Maxxis' outstanding preferred stock.

14.

Robert Glover ("Glover"), an individual, is a Defendant herein who may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via U.S. first class mail, postage prepaid, to him at his residence at 3663 Grahams Port Lane, Snellville, Georgia 30039. On information and belief, at all relevant times Gates was a member of the Board of Directors of Maxxis and owner of approximately 181,818 shares of Maxxis' outstanding common stock.

15.

Sandra Jordan ("Jordan"), an individual, is a Defendant herein who may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via U.S. first class mail, postage prepaid, to her at her residence at 100 Dewey Street, Pittsburgh, Pennsylvania 15218. On information and belief, at all relevant times Jordan was a member of the Board of Directors of Maxxis and owner of approximately 6,000 shares of Maxxis' outstanding preferred stock.

16.

Terry Harris ("Harris"), an individual, is a Defendant herein who may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via U.S. first class mail, postage prepaid, to him at his residence at 120 Sloan Road, C#6, Columbia, South Carolina 29223. On information and belief, at all relevant times Harris was a member of the Board of Directors of Maxxis and owner of approximately 227,273 shares of Maxxis' outstanding common stock.

17.

Steve Johnson ("Johnson"), an individual, is a Defendant herein who may be served with

process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via U.S. first class mail, postage prepaid, to him at his residence at 3348 Hickory Ridge, Ortonville, Michigan 48462. On information and belief, at all relevant times Johnson was a member of the Board of Directors of Maxxis and owner of approximately 4,000 shares of Maxxis' outstanding common stock.

18.

George Steinberger ("Steinberger"), an individual, is a Defendant herein who may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via U.S. first class mail, postage prepaid, to him at his residence at 2472 Hackney Court, SE, Salem, Oregon 97301. On information and belief, at all relevant times Steinberger was a member of the Board of Directors of Maxxis and owner of approximately 4,000 shares of Maxxis' outstanding common stock.

19.

Pam Ward ("Ward"), an individual, is a Defendant herein who may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of the summons and this Complaint, via U.S. first class mail, postage prepaid, to her at her residence at 100 Dewey Street, Pittsburgh, Pennsylvania 15218. On information and belief, at all relevant times Ward was a member of the Board of Directors of Maxxis.

## OVERVIEW

20.

Maxxis was incorporated in January of 1997 in the State of Georgia. Maxxis' business model was the use of independent sales associates marketing communications, internet services, and nutritional and health enhancement products through a multi-level network marketing system.

Maxxis conducted a public offering of common stock in January and February of 1999.

21.

The individuals primarily responsible for the creation of Maxxis are Defendants Stokes and Curry. Both men have extensive backgrounds in the multi-level marketing industry, and a personal and business relationship with one another over a long period of time. Stokes has been described as the "brain trust" of Maxxis, while Curry tended to handle operational issues. Although Stokes acted as Chairman of the Board during the entire time of Maxxis' existence, he recognized that he did not have sufficient corporate experience to run the corporation on a day-to-day basis. To that end, he recruited Tom Gordy, an individual with extensive high-level corporate governance and management skills. Subsequently, James W. Brown was retained to act as Maxxis' Chief Financial Officer. Mr. Brown also had significant experience with regard to corporate governance and high-level management responsibilities and duties. On or about March 2001, Mr. Gordy resigned as Chief Executive Officer and from the Board of Directors, and shortly therefore Mr. Brown resigned as Chief Financial Officer. Upon the resignation of Mr. Gordy, Stokes assumed the role of Chief Executive Officer while retaining his position as Chairman of the Board.

22.

In the fiscal year ending June 30, 2000, Maxxis enjoyed its best financial performance, with total net revenues of $29,133,000 and a net income of $1,033,000. By December 31, 2000, however, Maxxis was insolvent, and for the fiscal year ending June 30, 2001, Maxxis' total net revenues had dropped to $10,726,000, with a net loss of $3,956,000.

23.

After the corporation became insolvent, the Defendants disregarded their fiduciary duties

to Maxxis and its creditors and instead promoted their own financial interests as Maxxis' equity holders, senior management and Directors, by engaging in egregious acts of misconduct which further impaired Maxxis' financial condition. These included the following:

(a) Spending almost $1,000,000 between 2000 and 2004 to repurchase common stock, rather than using the same funds to invest in the company's operations or to pay down indebtedness;

(b) Spending over $700,000 on an award cruise in November 2002, at a time when the corporation was hemorrhaging cash and unable to pay its bills on a timely basis;

(c) Entering into a consulting agreement by and between Maxxis 2000, Inc. and Rachel Stokes (wife of Defendant Stokes) d/b/a Partners with Power, effective on December 7, 2000, wherein the company agreed to pay Rachel Stokes $10,000 per month together with up to $100,000 per year to cover initial costs. The stated purpose of the consulting agreement was to retain Ms. Stokes to provide a support network for the spouses of the independent associates of the corporation;

(d) Authorizing Maxxis to enter into an undocumented borrowing relationship "off the books" with Defendants Stokes and Ivey d/b/a The Maxxis Millionaires Society, without appropriate consultation with counsel or the auditors, and failing to adequately record the financial dealings between the two entities, thereby deceiving both creditors and investors regarding the financial condition of the company;

(e) Failure to pay taxes for communications revenues from approximately June 2002, through approximately February 2004;

(f) Failure to prepare and submit corporate annual tax returns for FYE June 30, 2002, FYE June 30, 2003, FYE June 30, 2004 and FYE June 30, 2005;

(g) Failure to hire individuals competent to perform the necessary accounting and reporting functions for the firm, to implement appropriate procedures to insure timely and competent performance of accounting and reporting functions, and to respond in a competent fashion when the failures of the accounting and reporting obligations of Maxxis became apparent to the Defendants.

24.

As a direct result of the Defendants' misconduct, as set forth in the irresponsible acts listed above, the financial condition of Maxxis and its affiliated companies continued to deteriorate and they were forced to file for Chapter 11 bankruptcy protection on December 15, 2003.

**FACTUAL ALLEGATIONS**

25.

**Stock Repurchases**

The books and records of Maxxis show that it was insolvent by at least December 30, 2000. Despite the significant losses suffered by Maxxis in the fiscal year ending June 30, 2001, Maxxis' Board of Directors (the "Board") authorized the repurchase of significant amounts of common and preferred stock. In a Board meeting on or about August 21, 2002, Defendant Stokes proposed that the company raise approximately $1.5 million to repurchase shares of stock from shareholders wishing to sell their shares in Maxxis back to the company. Defendant Steinberger moved that the Board authorize the sale of corporate assets through asset purchase agreements to raise $2,000,000 to repurchase shares of Maxxis stock. The motion was approved by the Board. The corporation continued repurchasing its own stock until October 30, 2002, when, for the first time, Georgia law concerning the repurchase of shares by a company from shareholders was discussed in a Board meeting and the decision was made to cease the repurchase of shares.

During the time period in question, Maxxis repurchased over $900,000 of its own common and preferred stock.

26.

**Maxxis Millionaires Society Lending Relationship**

In early 2001, Maxxis became incapable of paying its bills as they came due. With full Board knowledge and consent, Maxxis entered into an undocumented "off the books" lending relationship with Defendants Stokes and Curry doing business as The Maxxis Millionaires Society ("MMS"). Beginning in early 2001 and continuing to the end of calendar year 2002, Maxxis repaid MMS almost $2,000,000 for various corporate expenses which MMS alleges it had paid on Maxxis' behalf. In many cases, there is little or no backup documentation for the alleged payments made by MMS on behalf of Maxxis.

27.

**Caribbean Cruise**

With full knowledge and consent of the Board, Maxxis provided a promotional cruise to its sales associates in November 2002. This occurred despite the fact that Maxxis was then insolvent and, in fact, had to borrow a majority of the more than $700,000 necessary to finance the cruise from MMS under its undocumented borrowing agreement.

28.

**Consulting Agreement with Rachel Stokes**

In December, 2000, at or about the time the company became insolvent and just several months before the company was forced to borrow from MMS under its undocumented borrowing agreement, Maxxis, with full knowledge and consent of the Board, entered into a consulting agreement with Rachel Stokes d/b/a Partners with Power. Under said consulting agreement, Ms.

Stokes was paid $120,000 in salary and approximately $100,000 to cover initial costs. The purpose of the consulting agreement was not to promote sales by sales associates, but rather to provide a support network for the spouses of sales associates. During the time that the consulting agreement was in place, sales fell precipitously and the corporation's insolvency deepened.

29.

**Failure of Internal Control Structure**

On or about August 14, 2001, Maxxis dismissed the firm of Arthur Anderson, LLP as its independent auditors. In their place, the firm of Cherry, Bekaert & Holland, LLP ("CBH") was retained as independent auditors for Maxxis. On or about January 31, 2002, CBH issued its independent auditors' report in support of the Form 10-K filed for FYE June 30, 2001. In March 2002, the Securities and Exchange Commission (the "SEC") began sending comment letters requesting further explanations and supplemental information regarding the Form 10-K filed for FYE June 30,2 001 and the disclosures made therein.

Thereafter, CBH began preparation of the Form 10-K for FYE June 30, 2002. On or about December 11, 2002, CBH resigned as independent auditors and withdrew its opinion attached to the June 30, 2001 10-K. The reason given for their resignation was an unreconciled difference in the stock ledger in the amount $192,000. Additionally, Mr. Michael Johnston, a CBH employee, stated to management that he could not rely on management representations. Contemporaneous with the resignation of CBH, Maxxis ceased its undocumented borrowing relationship with MMS. Through the date of its resignation, CBH had been paid over $112,000 in professional fees. As a result of the misrepresentations of Maxxis' management at that time, fees that had been spent on preparation of the 2001 opinion and fees spent on preparation of the unfiled 2002 opinion were wasted. In late February, the firm of Tauber & Balser ("T&B") was

retained to replace CBH as independent auditors for Maxxis. At that time, T&B announced to the Board that they were not comfortable working with then-CFO Mr. Dechane Cameron because they felt that they could not address issues adequately with him. In addition, T&B noted a number of checks made payable to and authorized for payment by Dechane Cameron, the CFO. Many of those checks were not supported by documentation, such as a customer invoice for payment. As a result of Mr. Cameron's poor job performance and the T&B letter, the Board, belatedly, requested the resignation of Mr. Cameron on or about March 20, 2003.

30.

**The Defendants' Conduct in the Face of**
**<u>Maxxis' Escalating Liquidity Crisis and Insolvency</u>**

By the end of fiscal year 2001, the Defendants' self-dealing, misconduct and gross mismanagement contributed to Maxxis' escalating liquidity crisis, to the severe detriment of its creditors and in flagrant breach of Defendants' duties.

In response to the liquidity crisis, Defendant Stokes proposed a financing process in which the company would "sell" Asset Purchase Agreements (the "APA"). Through the APA, an investor could purchase a block of four (4) of Maxxis' long distance customers for $1,000. In return, the investor would receive $3.00 per month per block for 36 months. After 36 months, the block would be repurchased by Maxxis from the investor at a price of $1,300. These APA's, which appear to have been a form of high interest financing, resulted in Maxxis paying the investors an annual interest rate of 14.4% at a time when the prime rate was 4.75%.

At the end of 2002, Maxxis had not cured its operational problems and was facing continuing liquidity issues. Defendant Stokes came up with a new idea for financing in which the company would "sell" Sales Agreements (the "SA"). Through the purchase of SA's, an investor could purchase blocks of 144 of Maxxis' long distance customers for $2,000 per block, again for

36 months. In return, the investor would receive monthly payments of approximately $80.00+ per month per block. The investor would not receive a payment or buyback payment after the 36 months. However, the annual interest rate of the new agreements, the SA's, provided the investor with a return of approximately 25%.

31.

The culmination of Maxxis' financial crises, which were created in part and generally exacerbated by Defendants' gross mismanagement, was the filing of the petitions in bankruptcy on the December 15,2003, and the ultimate conversion of the case to Chapter 7.

## CAUSES OF ACTION

### COUNT I: BREACH OF FIDUCIARY DUTY - CORPORATE WASTE (AGAINST ALL DEFENDANTS)

32.

Plaintiff reiterates and realleges the allegations set forth in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33.

All Defendants owed fiduciary duties of care, loyalty and good faith to Maxxis and its creditors. Moreover, the Defendants were required to use their abilities to control and manage Maxxis in a fair, just and equitable manner, to refrain from abusing their positions of control and not to favor their own interests or those of insiders and others at the expense of Maxxis and its creditors.

34.

As set forth above, Maxxis was insolvent from the end of calendar year 2000 through the Petition Date. As result, Maxxis and its Directors and Officers were charged with fiduciary obligations to Maxxis' creditors and further charged with the duty of conserving and managing

the remaining assets of Maxxis for the benefit of creditors.

35.

As further set forth above, Defendants deliberately engaged in a pattern of self-dealing, misconduct and gross negligence, from at least 2000 through the Petition Date, which expended and wasted more than $5,000,000 of corporate funds. Such activities included, but are not limited to:

(a) spending almost $1,000,000 between 2000 and 2003 to repurchase common stock, rather than using those funds to invest in Maxxis operations or pay down indebtedness;

(b) paying over $700,000 for a promotional cruise at a time when the corporation was not generating enough income to pay its monthly bills without the undocumented financial assistance of MMS;

(c) entering into "sweetheart" contracts, such as the one with Rachel Stokes' Partners with Power in the approximate amount of $220,000;

(d) entering into an undocumented lending arrangement with insiders and failing to maintain internal financial controls, resulting in the resignation of the auditors and wasting of fees in excess of $100,000 expended on the preparation of annual reports.

Such conduct is in violation of the Defendants' fiduciary duties to Maxxis and its creditors.

36.

As a direct and proximate result of the Defendants' breach of their fiduciary duties, Maxxis and its creditors were injured.

37.

Plaintiff hereby sues the Defendants for recovery of damages in an amount to be determined at trial but estimated to exceed $5,000,000.

COUNT II; DEEPENING INSOLVENCY
(AGAINST ALL DEFENDANTS

38.

Plaintiff reiterates and realleges the allegations contained in paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.

As set forth herein, while Maxxis was insolvent, or in the zone of insolvency, the Defendants engaged in numerous improper transactions which impaired Maxxis' financial condition, deepened the insolvency of the Debtors and hastened Maxxis' slide into bankruptcy. These activities were undertaken by the Defendants in order to promote their own financial interests as Maxxis' Officers and Board Members.

40.

The depletion of Maxxis' assets could have been averted and much or all of the value of Maxxis salvaged if Maxxis had been restructured in a timely manner.

41.

In addition to the above harm, by failing to act in a diligent and timely manner to address Maxxis' losses, Maxxis was forced to seek bankruptcy protection, causing damage to Maxxis in the form of legal and administrative costs and operational limitations imposed upon it.

42.

As a direct and proximate result of the Defendants' improper actions, Maxxis was injured.

43.

Plaintiff hereby sues the Defendants for recovery of damages in an amount to be determined at trial but estimated to exceed $5,000,000.

## COUNT III: EQUITABLE SUBORDINATION OF ALL CLAIMS HELD BY OR WHICH MY BE ASSERTED BY ANY OF THE DEFENDANTS HEREIN (AGAINST ALL DEFENDANTS)

44.

Plaintiff reiterates and realleges the allegations contained in paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45.

As of the filing of this Adversary Proceeding, the Plaintiff does not yet know what, if any, claims may be asserted against the Debtors by any of the Defendants herein. In addition to any claims filed by the Defendants by the Bar Date, which has passed, and in the event such additional claims are filed or asserted, the Plaintiff requests the entry of an order equitably subordinating all such claims to the claims of all other creditors of any of the Debtors against which such claims may be asserted, and these Defendants should not be permitted to receive any distribution on any of their claims against the Debtors before payment in full is made to all other creditors of the Debtors.

46.

The Plaintiff expressly reserves the right to amend and supplement this Count to the extent that the Defendants file specific claims against the Debtors not contemplated herein.

WHEREFORE, Plaintiff respectfully prays the Court to enter judgment against the Defendants on each of the Plaintiff's causes of action asserted herein, thereby providing the following relief to Plaintiff:

(a) On Count I, damages in the amount of at least $5,000,000 as against all Defendants, jointly and severally, for breach of fiduciary duty and/or corporate waste;

(b) On Count II, damages in the amount of at least $5,000,000 as against all

Defendants, jointly and severally, for deepening insolvency;

(c) On Count III, subordinating any claims of Defendants allowed in this case to all other allowed claims, as requested hereinabove;

(d) Award of pre- and post-judgment interest on all damages awarded at the highest rate(s) permitted by law;

(e) Award of costs as against all Defendants, jointly and severally; and

(f) Granting such other and further relief, whether in law or equity, to which the Plaintiff has shown or hereafter shows himself to be justly entitled.

This __14th__ day of November, 2006.

Respectfully submitted,

SCROGGINS & WILLIAMSON

/s/ J. Robert Williamson

J. ROBERT WILLIAMSON
Georgia Bar No. 765214
JOHN T. SANDERS, IV
Georgia Bar No. 625705
Counsel for the Trustee

1500 Candler Building
127 Peachtree Street, NE
Atlanta, GA 30303
(404) 893-3880